IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES BARTON FEHR, Individually; as Personal Representative of the Estate of CHARLES STEPHEN FEHR, Deceased; and as Personal Representative of the Estate of VICKI WILKINSON FEHR, Deceased; and BRIAN FEHR, Individually, | § § § § § § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:18-cv-01083-E |
| UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant United States' Motion to Dismiss (Doc. No. 30). Having considered the motion, the parties' submissions to the Court, argument of counsel at a February 18, 2020 hearing on the matter, and applicable law, the Court finds it should GRANT the motion.

BACKGROUND

The Fort Worth Center of the Federal Aviation Administration (FAA) provides air traffic control services to aircraft operating in airspace over parts of Texas, Oklahoma, Arkansas, Louisiana and New Mexico. The Center's airspace is divided into six geographic areas, which are further divided into sectors. The airspace also is divided into sectors by altitude.

Charles and Vicki Fehr were flying from Michigan to Texas on July 26, 2015. The Fehr's aircraft entered the Center's Seaver Low Sector, an area northeast of Dallas, at about 2:45 p.m. Shortly thereafter, Mr. Fehr contacted the Center and declared an emergency, advising that he had lost engine power and needed to get to an airport "right away." Developmental controller Kari Legge responded to Mr. Fehr and continued to communicate with him until the aircraft crashed several minutes later. At the time, instructor Brian Barker was providing on-the-job training to Legge, and she was working three combined sectors.

Both Mr. and Mrs. Fehr died, and their sons filed this wrongful death action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680. They allege air traffic controllers at the Center failed to follow FAA procedures and act with reasonable care in handling Mr. Fehr's request for vectors to an emergency landing airport. Plaintiffs also allege the FAA "has a system-wide training and qualification problem related to ... providing aircraft in distress with information about nearby airports." Plaintiffs' aviation expert on air traffic control has opined that "[m]ultiple mistakes in operations, supervision and management," including inadequate controller and supervisor training, inadequate staffing decisions, and inadequate supervision, "created conditions that led to the crash."

Defendant moves to dismiss plaintiffs' claims of improper training, staffing, and supervision for lack of subject matter jurisdiction, asserting the claims fall within the discretionary function exception to the United States' waiver of sovereign immunity.

LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party can move for dismissal if a court lacks subject matter jurisdiction, including when a plaintiff's claims are barred by sovereign immunity. *See Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). A movant's challenge may be either facial, based on the allegations in the complaint, or factual. *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989), *aff'd sub nom*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990). A challenge is factual, as in this case, if the movant submits "affidavits, testimony, or other evidentiary materials." *Id.* The court may "dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).

"The party asserting jurisdiction has the burden of proof." *United States v. Renda Marine, Inc.*, 667 F.3d 651, 654 (5th Cir. 2012). To defeat a factual attack, a plaintiff "must prove the existence of subject-matter jurisdiction by a preponderance of the evidence" and is "obliged to submit facts through some evidentiary method to sustain his burden of proof." *Irwin*, 874 F.2d at 1096 (internal quotation marks and footnotes omitted). Dismissal under rule 12(b)(1) is appropriate if it "appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

THE FTCA AND THE DISCRETIONARY FUNCTION EXCEPTION

The FTCA provides a limited waiver of the United States' sovereign immunity for torts committed by federal employees acting within the scope of their employment. 28 U.S.C. §§ 1346(b), 2674; *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 535 (1988). There is an exception to the waiver—and a party lacks subject matter jurisdiction to sue the United States—when a claim arises from a government employee's performance of a discretionary function or duty on behalf of a federal agency. 28 U.S.C. § 2680(a). Exceptions to the FTCA waiver of immunity, like the discretionary function exception, are strictly construed in favor of the United States. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).

Courts apply a two-part test to determine whether the discretionary function exception applies in a given case, bearing in mind that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies." *Berkovitz*, 486 U.S. at 536 (citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1983)). First, the court must determine whether the act was "a matter of choice for the acting employee," meaning it must involve an element of "judgment or choice." *Berkovitz*, 486 U.S. at 536. Thus, the discretionary function exception does not apply when a "federal statute, regulation, or policy specifically prescribes a course of action for the employee to follow." *United State v. Gaubert*, 499 U.S. 315, 322 (1991). Second, the court must decide if the judgment involved is "of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23. The exception "protects

4

only governmental actions and decision based on considerations of public policy." *Id.* at 323 ("[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort….") (internal quotation marks and citations omitted). There need not be an evaluation of the employee's intent at the time of the act; the exception covers any discretionary decision that is "susceptible" to policy analysis. *Id.* at 324–25. And, if there is a policy allowing the government employee to exercise discretion, a court must presume the employee's "acts are grounded in policy when exercising that discretion." *Id.* at 324–25.

## ANALYSIS

*1.     Training and Supervision*

Plaintiffs allege an FAA "system-wide training and qualification problem related to providing aircrafts in distress with information about nearby airports." In that regard, plaintiffs' air traffic control expert Richard P. Burgess identifies certain FAA training that should be required, enhanced, and/or expanded, including training on emergency procedures and assistance, actual accidents/incidents, handling emergencies for supervisory and controller-in-charge personnel, and scenario-based training to assistant controllers in responding to emergencies. Burgess also complains of instructor Barker's supervision over Legge, including Barker's failure to take over for Legge, as well as supervision by controller-in-charge Michael Okray and front-line manager Kobi Mitchell.

To show defendant's employees were not performing discretionary acts, plaintiffs rely on requirements in FAA Order JO 3120.4N, which prescribes "instructions, standards, and guidance for the administration of air traffic technical training," and FAA Order ZFW 3120.38E, a supplemental order applicable to the Fort Worth Air Route Traffic Control Center.  *See* FAA Air Traffic Technical Training Order JO 3120.4N; Fort Worth ARTC Center Traffic Technical Training Program Order ZFW 3120.38E.

First, plaintiffs contend evidence shows controllers at the Center may not have undergone proficiency and/or "refresher" training specifically required by Order JO 3120.4N.  *See* FAA Order JO 3120.4N, pp. 4-3, 4-4.  Plaintiffs, however, have not alleged a failure of Center employees to obtain required training.  In any event, defendant, in its reply, concedes that a controller's failure to receive mandatory training would not be protected by the discretionary function and seeks dismissal only with respect to its immunity from the allegations of a "system-wide training problem."  Plaintiffs also direct the Court to Order JO 3120.4N 's provision that an on-the-job training instructor "is responsible for the position/sector" during performance skill checks.  FAA Order JO 3120.4N, p. 6-4; *see also* FAA Facility Operation and Administration Order JO 7210.3Y, ¶ 2-2-3 ("When a developmental and an instructor are both signed on at a position, the instructor is responsible for all activity at that position.").  Defendant does not dispute that Barker was responsible for the positions/sectors on which Legge was training and asserts the discretionary function exception applies only to his performance of training and supervisory duties.

6

With respect to both the FAA system-wide training and Barker's conduct in supervising Legge, as well as the performance of other supervisory duties at the Center, plaintiffs have not shown that the training or supervision was done in contravention of any specific statute, regulation or policy. The Court finds the allegedly negligent training and supervisory conduct raised in defendant's motion to dismiss involves judgment or choice and, thus, is discretionary.

The Court next must consider whether the complained-of decisions and acts by defendant's employees were based on considerations of public policy. Absent a specific statute, guideline or regulation prescribing the manner of training or supervision of employees and other individuals, courts have consistently found these matters to fall within the discretionary function exception. *See, e.g., Dorsey v. Relf*, No. 4:12-cv-00021-A, 2013 WL 791604, at *5–6 (N.D. Tex. 2013), *aff'd*, 559 F. App'x 401 (5th Cir. 2014); *Viola v. United States*, No. 10-1959, 2011 WL 231025, at *8 (E.D. La. Jan. 21, 2011) (collecting cases); *Tremblay v. United States*, 261 F. Supp.2d 730, 735 (S.D. Tex. 2003); *Airplanes of Boca, Inc. v. United States ex rel. F.A.A.*, 254 F. Supp.2d 1304, 1309 (S.D. Fla. 2003), *aff'd sub nom*, *Airplanes of Boca v. United States*, 112 F. App'x 4 (11th Cir. 2004). Indeed, the FAA is responsible for promoting safety in flight transportation. *See* 49 U.S.C. §§ 40101(c), (d), 40104. Decisions regarding the type, content, and manner of its training and supervision are susceptible to policy analysis because the FAA must balance its goal of safe air transportation with agency resources. *Tremblay*, 261 F. Supp.2d at 735 (citing *Varig Airlines*, 467 U.S. at 816-17); *Dorsey*, 2013 WL 791604, at *5–6. This Court likewise finds the discretionary

function exception applies in this case to bar negligent training and supervision claims related to the decisions and conduct raised in defendant's motion.

2.  *Staffing*

According to plaintiff's complaint, Legge was controlling three combined sectors prior to and at the time of the crash. The Traffic Flow Management System (TFMS) alerted the Center prior to the accident that "the traffic level in the sectors controlled by Legge exceeded the Monitor Alert Parameter (MAP) for those sectors and should [have been] decombined, meaning a separate controller should control each sector, rather than a single controller handling multiple sectors." Burgess has opined that inadequate staffing, including allowing Legge to work the combined positions during a heavy traffic period and not decombining sectors or adding a radar assist controller when there were multiple controllers available, created conditions that led to the crash.

Plaintiffs assert the controller-in-charge "ignored the procedures and guidance prescribed by the FAA to maintain 'safe and efficient operation'" in FAA Order JO 7210.3Y and FAA Order ZFW 710.245M.[1] *See* FAA Order JO 7210.3Y, ¶ 1-1-1; FAA Fort Worth ARTC Center Standard Operations and Procedures Order ZFW 7110.245M, § 2. These orders authorize consolidation of positions "in consideration of activity and the qualifications of the personnel involved." *See* FAA Order JO

---

[1] Plaintiffs also direct the Court to evidence of a facility "requirement" that front-line manager/controller-in-charge and the traffic management unit "develop a plan for addressing a sector that was going to exceed the MAP number, and subsequently advise the operations manager and controllers of the plan." Plaintiffs' complaint, however, does not allege a failure to develop a required plan or advise of the plan.

7210.3Y, ¶ 2-6-5. They also address procedure for decombining sectors. Specifically, upon receiving a TFMS alert, facility traffic management units are required to analyze "the data for the alerted time frame to develop expected impact and recommendations to address the alert." *See id.*, ¶ 17-8-3. A front-line manager may initiate the de-combining of sectors, but must coordinate with the controller who is to be relieved of the position. *See* FAA Order ZFW 7110.245M, ¶ 2-1-2(c). The controller being relieved of the sector then determines when the sector may be decombined with the least negative impact to the operation. *See id.*, ¶ 2-1-2(d). The orders do not mandate when sectors are to be decombined and, thus, defendant's employees must exercise their judgment to decide exactly when and what action, if any, to take.

Because these Orders, both by their express language and impliedly, allow defendant's employees to exercise discretion, the Court must presume the employees' acts are grounded in policy when they exercise that discretion. *See Gaubert*, 499 U.S. at 324. Further, the mission of the TFMS is to "balance air traffic demand with system capacity to ensure the maximum efficient utilization of the National Airspace System." FAA Order JO 7210.3Y, ¶ 17-1-1. Thus, decisions regarding when best to use available staff to accomplish this mission are susceptible to policy analysis. *See, e.g., Airplanes of Boca*, 254 F. Supp.2d at 1309 (applying Supreme Court's two-prong test, court determined United States was immune from liability for claims related to staffing of radar control room). The Court finds the discretionary function exception

9

also applies to bar negligent staffing claims related to the use of defendant's employees, including decisions on whether to decombine sectors, at the Center.

CONCLUSION

The Court concludes that the discretionary function exception to the FTCA bars plaintiffs' claims with respect to the allegations of negligent training, supervision, and staffing raised in defendant's motion to dismiss. Accordingly, defendant's Motion to Dismiss (Doc. No. 30) is **GRANTED**.

**SO ORDERED.**

Signed February 25, 2020.

ADA BROWN
UNITED STATES DISTRICT JUDGE